IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| TONI DAVIS,  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>YOUNG & ASSOCIATES, INC., et al.,  )<br>    Defendants.  ) | **MEMORANDUM OPINION**<br>Case No. 1:20cv00061 |

The plaintiff, Toni Davis, ("Davis"), brings this civil rights action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., against the defendant and former employer, Young & Associates, Inc.[1] Davis claims that the defendant retaliated against her for being a witness in an allegation of discrimination in violation of Title VII.

This matter is before the undersigned magistrate judge on the Defendant's Motion To Compel Arbitration And Stay Proceedings Pending Arbitration, (Docket Item Nos. 18, 20) ("Motion"), on referral pursuant to 28 U.S.C. § 636(b)(1)(A).[2]

---

[1] Davis has sued four different iterations of the defendant's name. In its motion, Young & Associates, Inc., admits it was plaintiff's employer and is the proper defendant.

[2] The undersigned magistrate judge will enter a Memorandum Opinion and Order under 28 U.S.C. § 636(b)(1)(A) rather than a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) because pretrial motions of this sort do not appear to require a recommended ruling under § 636(b)(1) and because two federal appellate courts have approved disposition of such motions by magistrate judges. *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133-34 (3rd Cir. Mar. 19, 2014); *Next Step Med. Co., Inc. v. Johnson & Johnson Int'l*, 619 F.3d 67, 69 n.2 (1st Cir. 2010) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010)); *see also Carrillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1060 (W.D. Tex.

Counsel for the parties were heard on the Motion by telephone conference call on August 17, 2021. Based on the arguments and representations of counsel, and the evidence provided to the court, the court will take the Motion under advisement and set the matter for summary jury trial on the issue whether the parties formed an agreement to arbitrate.

## I. Facts

In her Complaint, (Docket Item No. 1), Davis alleges that she worked for the defendant, doing business as Shoney's, at its Abingdon, Virginia, restaurant beginning in August 2016. The plaintiff alleges that she was employed as Head Supervisor of the dining room from April 2018 to March 9, 2019. She alleges that she was a witness to an allegation of discrimination by another employee in or about September 2017 that resulted in that employee filing a Charge of Discrimination against the defendant with the Equal Employment Opportunity Commission, ("EEOC"). The plaintiff claims that the defendant retaliated against her for being a witness in this employee's EEOC proceeding. In or about January 2018, Davis filed a Charge of Discrimination against the defendant with the EEOC. Thereafter, she claims that the defendant threatened to terminate her employment without reason and, on March 9, 2019, without warning or cause, demoted her from Head Supervisor to Relief Supervisor. Davis also alleges that, on March 10, 2019, the defendant issued a written warning against her for "hostility toward managers,"

---

2020); *Bohart v. CBRE, Inc.*, 2018 WL 1134434, at *2-3 (D. Colo. Feb. 28, 2018); *Scales v. SSC Winston-Salem Operating Co., LLC*, 2017 WL 4467278, at *1 n.1 (M.D. N.C. Oct. 5, 2017); *Cumming v. Indep. Health Ass'n, Inc.*, 2014 WL 3533460, at *1 (W.D. N.Y. July 16, 2014).

which was not justified. After that, Davis said, the defendant also placed on her paystub credit for tips that she did not receive, thereby increasing the taxes withheld from her pay. Davis further alleges that the defendant created a hostile work environment against her by encouraging other employees to treat her differently.

The defendant has provided the Declaration Of Brian Spencer, (Docket Item 19-2) ("Spencer Declaration"), in support of the Motion. In this declaration, Spencer stated that he is the President of Young & Associates, Inc., which owns and operates Shoney's restaurants in Southwest Virginia and one restaurant in Johnson City, Tennessee. According to Spencer, the operation of Young & Associates, Inc.'s, restaurants has an impact on interstate commerce, in that it regularly provides meals for customers traveling and/or residing outside of Virginia, purchases food and supplies from vendors and suppliers outside of Virginia, facilitates point-of-sale transactions with credit card companies and financial institutions located outside of Virginia and hires employees who reside outside of Virginia.

Spencer stated that Davis was hired on August 17, 2016, to work in the defendant's Bristol, Virginia, restaurant, where she remained an employee until the restaurant closed due to the COVID-19 pandemic in 2020. When Davis was hired, Spencer said, the defendant utilized the services of Strategic Outsourcing, Inc., ("SOI"), a professional employment organization, to handle various payroll, human resourcing and other administrative tasks. Spencer said that, when Davis was hired, she executed an employment agreement with SOI, which was attached to the Spencer Declaration as Exhibit A. (Docket Item No. 19-2 at 5.)

> Strategic Outsourcing, Inc. … and the business for which you perform services (Company) are parties to an agreement under which SOI provides services to Company. As part of this arrangement you will be paid as an assigned employee through SOI for work you perform for and under the direction of Company, and you may also be able to participate in certain benefits offered through SOI. No modification to this page as originally written will be effective. Please sign below:
> …
> I and SOI mutually agree that any legal dispute involving SOI, Company, or any benefit plan, insurer, employee, officer, or director of SOI or Company arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment will be resolved exclusively through binding arbitration before a neutral arbitrator heard in the capital or largest city of the state in which I work or another mutually agreed location. The arbitrator will be appointed according to the rules of a neutral, mutually agreeable, commercially reasonable arbitration service, have the authority to grant the same remedies that would be available in a court of law (and no more), and be bound by the same rules of evidence as a federal court. The arbitrator will resolve the dispute solely upon the law applicable to the claims, evidenced [sic] adduced, and defenses raised, granting relief on no other basis, and may grant summary disposition or disposition on the pleadings. The arbitrator will render a reasoned written decision, and if an applicable statue requires fees or costs to be shifted the arbitrator can enforce such requirements. If a matter is heard in court and not arbitration for any reason. **I and SOI mutually waive any right to a jury trial.** Nothing herein prohibits me from complaining to government agencies or cooperating with their investigations as authorized by law. No failure to strictly enforce this agreement to arbitrate will constitute a waiver or create any future waivers and no-one [sic] other than counsel for SOI may waive this agreement for SOI, and then only in writing. This agreement to arbitrate is enforceable as a contract under the Federal Arbitration Act and any

> other laws validating arbitration agreements. If any part of it is invalid or unenforceable for any reason, the remainder of this agreement to arbitrate will still be enforceable.
> I have received the SOI Assigned Employee Handbook. My relationship with SOI is at will and can terminate at any time for any reason or no reason. Neither this Acknowledgement nor the Handbook creates a contract of employment. …
> …
> I understand I may request a copy of these Acknowledgments for my records, and I have read them (or had them read to me) and agree;

(Emphasis in original.) The document contains a signature that appears to read "Toni Davis," has the name of Toni Davis printed on it and is dated August 17, 2016.

According to Spencer, the term "Company" in this document referred to Young & Associates, Inc. Spencer stated that this document created a mutually binding agreement between Davis and SOI, and Young & Associates, Inc., was an "intended third-party beneficiary" of this agreement.

The defendant also has provided the Declaration Of Angelia Pingo, (Docket Item No. 27-1) ("Pingo Declaration"). According to Pingo, who currently is the Assistant Manager of the Abingdon Shoney's, in 2016, she was the Assistant Manager of the Bristol Shoney's, owned and operated by the defendant. Pingo said she was responsible for "onboarding" new hires, including sitting down and assisting new hires with the completion of the necessary employment paperwork. Pingo said that, in 2016, the defendant was utilizing the payroll services of SOI. She said that, as part of the onboarding process, SOI required new employees to sign a document entitled, "Section 3 – Assigned Employee Acknowledgments."

Pingo said that Davis was hired on or about August 17, 2016, as Head Supervisor for the Bristol Shoney's. Pingo said that she met with Davis on that date and witnessed her sign various employment documents, including a copy of the "Section 3 – Assigned Employee Acknowledgments," which was attached as part of Exhibit A to the Pingo Declaration. This document appears to be a photocopy of the document attached as Exhibit A to the Spencer Declaration.

Davis has provided an affidavit with her response to the Motion, (Docket Item No. 25-1) ("Davis Affidavit"). In this affidavit, Davis stated that, when she was hired by the defendant in August 2016, "[t]o the best of my knowledge, information, and belief, I did not sign" the document entitled "Section 3 – Assigned Employee Acknowledgments." Davis also stated "[t]o the best of my knowledge, information, and belief, I did not sign any document(s) agreeing to arbitrate claims that arose during my employment with Shoney's in August 2016, or at any other time thereafter."

Davis further stated that, as part of her job as Head Supervisor from April 2018 to March 9, 2019, she reviewed Shoney's employee handbook with new hires and had new hires sign certain employment forms. Davis said that the document entitled "Section 3 – Assigned Employee Acknowledgments" was not among the documents that she had new employees sign. Davis said that, after a new employee signed the employment documents, she would then place these documents in a brown envelope with the employee's name and file it. Davis said, in March 2019, she observed her manager, Andrea Madder, carrying a brown envelope with Davis's name on it in her purse at Shoney's and as she left the restaurant.

Davis said that, in June 2020, Shoney's approached her about signing new paperwork related to her employment, claiming that the paperwork she had signed when she was hired had been lost. Davis said she did not sign any such paperwork in 2020 or since that time, including that she did not sign any agreement to arbitrate claims that arose during her employment with Shoney's. Davis also stated that Spencer was not present when she was hired in August 2016, and he did not witness her signing any documents related to her employment.

## II. Analysis

As stated above, this matter is before the court on the defendant's Motion seeking to compel arbitration and stay these proceedings pending arbitration. The Federal Arbitration Act, 9 U.S.C. §§ 1-16, ("FAA"), governs the rights and responsibilities of the parties to an arbitration agreement. *See C.B. Fleet Co., Inc. v. Aspen Ins. UK Ltd.*, 743 F. Supp. 2d 575, 581 (W.D. Va. 2010) (citing *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009)). The FAA reflects "a liberal federal policy favoring arbitration agreements." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002) (citation omitted). Pursuant to the FAA, when a court finds that the parties "have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings … and compel arbitration in accordance with the agreement's terms." *Murray*, 289 F.3d at 301.

A party can compel arbitration if it establishes: (1) the existence of a dispute

between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the other party to arbitrate the dispute. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (citation omitted). The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that covers the parties' dispute. *See Dillon v. BMO Harris Bank*, N.A., 173 F. Supp. 3d 258, 263 (M.D. N.C. 2016) (citations omitted). If a party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute. *See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (citations omitted). Issues regarding the formation of an agreement to arbitrate are governed by ordinary state law contract principles. *See Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). Where there is a dispute of fact regarding the formation of an agreement to arbitrate, the party opposing arbitration is entitled to try the issue to a jury. *See* 9 U.S.C. §4.

In *Marroquin v. Dan Ryan Builders Mid-Atlantic, LLC*, 2020 WL 1171963, at *2 (W.D. Va. Mar. 11, 2020), Judge Dillon of this court wrote:

> When addressing a motion to compel arbitration under the FAA, courts apply a standard that is "akin to the burden on summary judgment." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 n.3 (4th Cir. 2016). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*,

> 56 F.3d 352, 358 (2d Cir. 1995), *cited with approval in Chorley Enters.,* ... 807 F.3d ... [at] 564.... "Where the party 'show[s]genuine issues of material fact regarding the existence of an agreement to arbitrate,' ... that party is entitled to a jury trial on the issue." *Galloway*, 819 F.3d at 91 (quoting *Chorley Enters.*, 807 F.3d at 564).

The party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists and produce sufficient facts to support that denial. *See Chorley Enters.*, 807 F.3d at 564 (citing *Oppenheimer & Co.*, 56 F.3d at 358). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In this case, the defendant has produced evidence of the existence of an arbitration provision that covers the parties' dispute. In particular, the defendant has produced evidence that Davis signed the "Section 3 – Assigned Employee Acknowledgments" at the time of her hiring. This document contains the following agreement to arbitrate:

> I and SOI mutually agree that any legal dispute involving SOI, Company, or any benefit plan, insurer, employee, officer, or director of SOI or Company arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment will be resolved exclusively through binding arbitration....

Since Davis's claims arise from her employment, the plain unambiguous language of this agreement covers the parties' dispute. *See Video Zone, Inc., v. KF&F Props.*, L.C., 594 S.E.2d 921, 924 (Va. 2004) (citations omitted) (in construing contracts,

courts should consider the words of the contract in accordance with their usual, ordinary and popular meaning to determine whether the terms are ambiguous).

In the face of this evidentiary showing, Davis has produced sufficient contradictory evidence to place the entitlement to arbitration in dispute. In particular, in her affidavit, Davis specifically denies that she signed the document entitled "Section 3 – Assigned Employee Acknowledgments" or any other agreement to arbitrate her disputes with her employer. Such an unequivocal denial is sufficient to create a dispute in fact that must be resolved by a jury. *See* 9 U.S.C. §4; *Chorley Enters.*, 807 F.3d at 564. Insofar as the defendant argues that the Davis Affidavit is not sufficient to create a dispute in fact because it states that Davis did not sign the agreement "[t]o the best of [her] knowledge, information or belief," the court rejects this argument. While affidavits not based on personal knowledge are insufficient to establish a dispute in fact, *see Cottom v. Town of Seven Devils*, 30 F. App'x 230, 234 (4th Cir. 2002), the Fourth Circuit has held that discovery answers made "to the best of … knowledge, information and belief" are sufficient to establish issues of fact if the facts stated are within the person's personal knowledge, *see Burwick v. Pilkerton*, 700 F. App'x 214, 215 (4th Cir. 2017). Here, whether Davis signed this agreement is within her personal knowledge, and she has stated that '[t]o the best of [her] knowledge" she did not sign this agreement.

Insofar as Davis argues that the defendant lacks standing to enforce this agreement to arbitrate, in that the defendant is not a party to the agreement, the court rejects that argument. "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce … an arbitration provision within a

contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000), *quoted in Innotec LLC v. Visiontech Sales, Inc.,* 2018 WL 3521181, at *5 (W.D. Va. July 20, 2018). Furthermore, Virginia law has long recognized that a party who is not a party to a contract, but is an intended beneficiary of the contract, may sue to enforce it. *See Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 268-70 (Va. 2019). Furthermore, an intent to benefit a third party may be gleaned from the language of the contract itself. *See Tingler,* 834 S.E.2d at 268-69.

Here the agreement at issue defines the "Company" as "the business for which you perform services." Davis was hired to perform services for Young & Associates, Inc., at its Shoney's restaurant. According to Spencer, the term "Company" in this agreement referred to Young & Associates, Inc., and Young & Associates, Inc., was an "intended third-party beneficiary" of this agreement. Davis has provided no evidence to contradict these assertions. Furthermore, the agreement states that the parties to the contract agree to submit "any legal dispute involving Company … arising from or related to my employment…" to arbitration. Based on these facts, if Davis entered into this agreement to arbitrate, Young & Associates, Inc., would have a right to enforce it as a third-party beneficiary.

The court also rejects Davis's argument that it should not enforce the agreement to arbitrate because it is unconscionable. As stated above, state-law principles govern issues regarding the formation of a contract. *See Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87. Furthermore, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate an

arbitration agreement. *See Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87 (quoting *Doctor's Assocs., Inc. v. Casarotta*, 517 U.S. 681, 687 (1996)). Under Virginia law, a contract is unconscionable if it is "'one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other.' The inequality must be so gross as to shock the conscience." *Smyth Brothers v. Beresford*, 104 S.E. 371, 382 (Va. 1920). Furthermore, the party asserting the unconscionability of a contract has the burden of proving that the contract is unconscionable by clear and convincing evidence. *See Marroquin*, 2020 WL 1171963, at *4 (citing *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 871 (E.D. Va. 2011).

Here, Davis argues that the arbitration agreement should not be enforced because it is unconscionable, in that the clause requiring arbitration was not conspicuous and because of her limited education, Davis did not understand that she was agreeing to arbitrate her claims. While these arguments may address unconscionability under the laws of other forums, unconscionability under Virginia contracts law focuses on whether the terms of the agreement are inequitable or amount to an unconscionable bargain. *See Mgmt. Enters., Inc. v. Thorncroft Co., Inc.*, 416 S.E.2d 229, 231 (Va. 1992) (quoting *Smyth Brothers,* 104 S.E. at 382). That cannot be said of the language of the arbitration agreement at issue here. The language of this agreement binds all parties to arbitration for their disputes before a mutually agreed upon neutral arbitrator from a commercially reasonable service in the state of the employment, or another mutually agreed location, who would have the authority to grant the same remedies available in court. Nothing about this language is inequitable or sets out an unconscionable bargain, especially in light of

the fact that courts routinely enforce arbitration agreements in Title VII cases such as this one. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999); *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669, 675-76 (W.D. Va. 2014).

Insofar as Davis's arguments might address whether she knowingly entered into an agreement to arbitrate, Davis has not produced any evidence that she did not see or did not understand the arbitration clause.   Instead, she has produced evidence that she did not sign this agreement. Because of this unequivocal denial, the issue must be put to a jury.

An appropriate Order will be entered.

DATED:   September 15, 2021.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE